IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**JUSTIN MICHAEL WILKENS,**

          Plaintiff,

    v.

**ROBERT WAYNE EDWARDS**, in his individual capacity; **THE STATE OF OREGON,**

          Defendants.

Case No.  6:14-cv-00907-MC

OPINION AND ORDER

McShane, Judge:

    Plaintiff Justin Wilkens seeks attorney fees in the amount of $343,717.36 following a jury trial and award totaling $181,169.62. The jury awarded Plaintiff $19,749.05 in economic damages, $100,000.00 in noneconomic damages, and $50,000.00 in punitive damages based on an excessive force claim brought under 42 U.S.C. §1983. ECF No. 135. The jury also awarded Plaintiff $11,420.57 based on a negligence claim against Defendant State of Oregon. *Id.*

Defendants concede that Plaintiff is the prevailing party, but dispute the amount that should be awarded.[1] As the prevailing party, Plaintiff may properly recover reasonable costs and fees pursuant to 42 U.S.C. § 1988(b). For the reasons below, the court GRANTS Plaintiff's fee petition, ECF No. 135, in PART, and awards Plaintiff the reduced amount of $318,689.48 in attorney fees and the reduced amount of $17,141.39 for his costs.

## STANDARD

The Ninth Circuit applies the "lodestar" method for calculating attorney fees. *Fischer v. SJB–P. D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). That calculation multiplies a reasonable hourly rate by the number of hours reasonably expended in the litigation. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933 (1983). The court then decides whether to enhance or reduce the lodestar figure by evaluating a set of factors. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and it should therefore only be enhanced or reduced in "rare and exceptional cases." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986).

---

[1] Confoundingly, Defendants dispute that Plaintiff prevailed on his negligence claim against Defendant State of Oregon, stating that "only one of two defendants was included on the verdict form, presumably meaning the State of Oregon was dismissed from the case." Def.'s Response, 2, ECF No. 143. As Plaintiff properly points out, "the State of Oregon was only removed as a named defendant on the verdict form in order to alleviate potential confusion with the jury deliberations." Pl.'s Reply, 3, ECF No. 149. The court discussed this matter with both parties prior to instructions and defense counsel agreed that the State of Oregon would be removed from the verdict form even though any judgment on Wilken's negligence would be a judgement against the State Defendant. Plaintiff is the prevailing party on both his excessive force claim and his negligence claim, *see* ECF No. 130, despite Defendants' deliberate misinterpretation of the verdict form.

# BACKGROUND

## I.    Motion for Attorney Fees

The parties' briefs surrounding Plaintiff's petition for attorney fees raise a host of issues and minor disputes. In determining the reasonableness of fees, the court is not required to respond to each specific objection. *Gates v. Deukmajian,* 987 F.2d 1392, 1400 (9th Cir. 1992). Rather, all that is required is a "concise but clear" explanation of reasons for the fee award. *Id.*

### A. Reasonable Hourly Rates

Courts apply prevailing market rates for purposes of § 1988 fee determinations. *Blum v. Stenson,* 465 U.S. 886, 895, n.11, 104 S. Ct. 1541 (1984). Prevailing market rates are those that the local legal market would pay for a case of this nature to a lawyer of comparable skill, experience, and reputation to a plaintiff's counsel of record. *Id.* at 897. Accordingly, courts in this District have determined that they will use the Oregon State Bar 2012 Economic Survey as their initial benchmark when reviewing fee petitions.[2] Exceptional circumstances may be taken into account for an enhancement of the lodestar figure, including when the prevailing rate does not account for the true market value of an attorney or when litigation includes extraordinary expenses or is exceptionally protracted. *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 130 S. Ct. 1662, 1674–75, 176 L. Ed. 2d 494 (2010).

Eugene, Oregon attorneys Lauren Regan and Marianne Dugan both seek an hourly rate of $375. Ms. Regan and Ms. Dugan fall in the "16-20 Years" and "21-30 Years" experience range of the Economic Survey's billing analysis, respectively. ECF Nos. 137, 139. Eugene, Oregon

---

[2] The economic survey is available at https://www.osbar.org/_docs/resources/Econsurveys/12EconomicSurvey.pdf. I note that Plaintiff's counsel point to a 2008 survey that is specific to the Civil Rights Section of the Oregon State Bar, but I do not apply that survey due to the fact that this District has opted to apply the 2012 Economic Survey, *see* https://www.ord.uscourts.gov/index.php/court-info/court-policies/fee-petitions. Further, I note that the 2008 survey's 20.3% response rate (55 persons of 271), wide range of hourly rates, and lack of geographical indicators render it unreliable for the purposes of the prevailing market rate inquiry. *See* ECF No. 137-3.

attorney Cooper Brinson seeks an hourly rate of $195. Mr. Brinson falls in the "0-3 Years" experience range. ECF No. 138.

Defendants object and assert that hourly rates for all three attorneys exceed reasonable rates for counsel in the Lower Willamette Valley area of the Economic Survey. According to the Economic Survey, the median hourly billing rate for plaintiff-side civil litigation attorneys in private practice in the area is $225, while the 25th percentile is $175 and the 75th percentile is $275. The prevailing market rates for Plaintiff's attorneys based on their years of experience are:

|  | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|
| **Marianne Dugan** | $225 | $250 | $300 | $320 |
| **Lauren Regan** | $179 | $210 | $228 | $255 |
| **Cooper Brinson** | $113 | $150 | $169 | $175 |

Plaintiff's attorneys cite a number of reasons for their requested hourly rates, including the difficulty of this case, the specialization required, and their expertise in the subject matter of this litigation. I have considered all of Plaintiff's assertions in support of and Defendants' objections to the requests for increased hourly rates. After careful consideration, I apply the 95th percentile hourly rate found by the Oregon State Bar 2012 Economic Survey for Ms. Dugan and Mr. Brinson. I adjust these rates for inflation to an hourly rate of $325.71 for Ms. Dugan and $178.12 for Mr. Brinson.[3]

With regard to Ms. Regan, the lead counsel in this case, the prevailing market rates do not adequately address her level of experience, her reputation in the state as a civil rights attorney, the risks associated with civil rights litigation, the lack of adequately trained and available attorneys in the Eugene area willing to take on this work, and the unique difficulties

---

[3] This adjustment was performed using the Bureau of Labor Statistics Consumer Price Index ("CPI") Inflation Calculator, available at http://www.bls.gov/data/inflation_calculator.htm. That calculator uses the average CPI for a given calendar year using the latest monthly index value to represents changes in prices of all goods and services purchased for consumption by urban households.

presented in the litigation of this case. I find her requested hourly rate to be reasonable after considering all of these factors.

　　To support the reasonableness of her hourly rate for the services she provided to Mr. Wilkens, Ms. Regan details 18 years of specialized skill in federal court on behalf of clients in cases involving police and government misconduct. ECF No. 137 at ¶ 6. In an era in which it is difficult to find an attorney with extensive experience before a jury, Ms. Regan has tried over 88 cases in federal and state courts. *Id.* As an educator in the field of civil rights litigation, Ms. Regan is a frequent presenter at bar sponsored CLE events, she presents to the public and the media, and she mentors and consults with less experienced attorneys seeking assistance with civil rights litigation. *Id.*

　　The reasonableness of Mr. Regan's hourly rate is supported by the declarations of experts who practice in the field of civil rights, Ms. Jennifer Middleton and Ms. Beth Creighton. Both have reviewed the hours and the hourly rate submitted by Ms. Regan and both opine that the rate sought by Ms. Regan is in keeping with the reasonable rates billed by a practitioner in the field with like expertise and skill. Ms. Middleton, who bills between 400 and 450 dollars per hour, states "despite my twenty years of civil rights experience, I often refer police misconduct cases to other lawyers—most often Ms. Regan—when I do not feel I have the expertise to handle them." ECF No. 141 at ¶ 5. Ms. Creighton refers to both Ms. Regan and Ms. Dugan as "two of Oregon's premier attorneys in the field of protecting the civil rights of individuals against police misconduct in the Eugene area." ECF No. 140 at ¶ 23.

　　More important than the above declarations outlining Ms. Regan's expertise and skill, I find that Ms. Regan's rates are reasonable in light of the litigation tactics employed by the attorneys representing the government in this case. The government's approach to litigating this

factually simple dispute was unprecedented in both its scope and its lack of regard for the law and the facts of the case. From my perspective it was disappointing; from the perspective of those wronged by police conduct, those tactics can only be described as purposely focused on chilling any attorney without a stout heart from an avalanche of pointless litigation.

In a basic injury case in which there was little factual dispute, the government conceded nothing. In a case where the typical attorney would stipulate to uncontested facts, the government failed to confer or stipulate to even the most obvious.

The government filed 22 objections to exhibits being introduced by the plaintiff, all of which were groundless. For example, government counsel objected to the introduction of photographs of the scene of the accident, the motorcycle at the scene, and photos of the police vehicle involved in the accident. Incredibly, they objected on grounds of "relevance, rule of completeness, also subject to foundation and see defendant's motion in limine 1, 10, and 11." ECF No. 92 at 2 (citations omitted). The irony that they were offering some of the same photographs seemed lost on them. Unable to grasp the relevance of plaintiff's medical records relating to the injury sustained, the defense objected to the introduction of such records on the grounds of "relevance, hearsay, hearsay within hearsay, rule of completeness, also subject to foundation and see defendant's motions in limine 4, 5, and 9." *Id.* Continuing in this same vein, the defense filed a 17-page memorandum in their attempt to keep out the testimony of treating physician and surgeon in a case where damages are being sought for a shoulder injury. The grounds were both confusing and meritless; defense counsel apparently believed that a treating physician is an expert witness who is subject to a *Daubert* hearing. None of these physicians were offering opinions on causation; rather they were simply testifying as to the extent of the injury, the treatment provided, and the reasonableness of costs. No attorney before me, in the 29

years I have been on the bench, has objected on these grounds to the testimony of treating

physicians in a case involving injury. One would be hard pressed to find more relevant testimony

on the issue of damages in an injury case.

But for the behavior of counsel at trial, I would chalk such tactics up to inexperience.

The condescendence that was exhibited toward plaintiff and his counsel during trial, however,

can only lead this court to agree with the characterizations found in the declarations of Ms.

Regan and Ms. Middleton that the government's trial tactics made the litigation more costly and

prolonged, and ultimately conclude that it was intended to deter the plaintiff bar from filing law

suits. While the best of us at times have our moments of eye rolling, snickering, and sighing in

the courtroom, it quickly became apparent that this was a concerted tactic to discredit the

plaintiff in front of the jury. At one point during examination of the defendant, government

counsel pretended to be asleep in his chair, his unconscious visage being broken only by an

occasional loud sigh.  Such tactics failed miserably to impress the jury and required repeated

warnings from the court.

The behavior of defense counsel throughout this litigation sadly supports the understated

contention in Ms. Regan's declaration that "defendants were particularly hard to work with . . . ."

ECF No. 137 at ¶ 18.Certainly the argument could be made that the government has rightfully

incurred the cost of the additional hours that their litigation tactics produced and nothing more.

But such tactics also chill the plaintiffs bar from engaging in the field of civil rights.  Those

willing to take on this additional burden have the right to set a reasonable rate to do so.

## B. Number of Hours Spent

Defendants also dispute Plaintiff's declared number of hours spent on this case, which are

749.20 hours for Ms. Regan, 183.57 hours for Mr. Brinson, and 15.48 hours for Ms. Dugan. Pl.'s

Memo in Support of Fee Petition, 2, ECF No. 142.

In their objection, Defendants' distinguish between the "overall amount of time spent on

the entire case," with which Defendants do not take issue, and "an award of the entire number of

hours spent" by Plaintiff's counsel, to which Defendants object. Def.'s Response, 3, ECF No.

143. Defendants assert this objection based on the fact that Plaintiff did not prevail upon all of

his claims. Defendants suggest an "across-the-board" percentage cut of 70% to reflect Plaintiff's

partial success. *Id.* (citing *Quesnoy v. Oregon*, 2012 WL 1155832 at *6 (D. Or. Apr. 6, 2012)

(Stewart, J.)).

I reject Defendants' objection to Plaintiff's requested hours. This case is procedurally and

factually distinguishable from *Quesnoy*, which involved an array of claims with varying levels of

success brought under entirely separate bodies of law, including the Americans with Disabilities

Act, the First Amendment, the Eighth Amendment, the Fourteenth Amendment, and state law

intentional infliction of emotional distress. *See Quesnoy*, 2012 WL 1155832 at *1. Importantly,

when assessing reasonableness of hours expended by the plaintiff's counsel in that case, Judge

Stewart noted: "None of the unsuccessful claims are related factually or legally to the successful

. . . claims." *Id.* at *5.

Unlike *Quesnoy*, there is no dispute that all of Plaintiff's claims center upon and arise out

of a single event. His unsuccessful claims are so factually intertwined with those upon which he

prevailed that any cut to his requested hours would violate the clear mandate of the Supreme

Court: "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief

PAGE 8 - OPINION AND ORDER

should not have his attorney's fee reduced simply because the district court did not adopt each

contention raised." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 1935 (1983).

I do not alter the hours set forth by Plaintiff in his fee petition.

### C.  Conclusion

Based on the above, Plaintiff is awarded attorney fees as follows:

|  | Hours | Rate | Fees |
|---|---|---|---|
| **Lauren Regan** | 749.20 | $375.00 | $280,950.00 |
| **Cooper Brinson** | 183.57 | $178.12 | $32,697.49 |
| **Marianne Dugan** | 15.48 | $325.71 | $5,041.99 |
| **Total Fees** |  |  | **$318,689.48** |

## II.    Bill of Costs

Plaintiff's Bill of Costs itemizes $16,496.36 in general trial expenses and expert fees and

$4,805.00 in fee declarant expenses, for a total of $21,201.36.

Defendants object to (1) $80 witness fees for the Lane County Sheriff's Department for a

lack of explanation; (2) $10 ambulance account report for a lack of documentation; (3) $21.49

for trial materials from an office supply store for a lack of documentation and asserting that

office supplies should be considered overhead; (4) $2,090.00 for  ExamWorks testimony costs

for a lack of documentation, (5) $37.50 for Pacer research, asserting that this should be

considered overhead; (6) expert fees, generally, asserting that § 1988 does not allow an award of

expert witness fees on § 1983 claims; (7) $2,500.00 for "trial testimony fees" for Dr. Boespflug

because he did not testify at trial; (8) $3,000.00 for "trial testimony fees" for Dr. Sheerin because

he was not designated as an expert and for lack of documentation; (9) $800.00 and $347.47 for

"expert witness fees" for Gary Monteleone and Bill Cole, respectively, for lack of

documentation; (10) two separate fees of $1,675.00 and $1,237.50 in expert fees for Dr.

Robertson for lack of documentation; and, finally, (11) $1,575.00 and $3,230.00 for "fee declarant/expert fees" for Ms. Middleton and Ms. Creighton, respectively, asserting that such fees are not recoverable.

### A. General Objections

Upon careful consideration of Defendants' objections and Plaintiff's cited reasons for seeking the relevant fees, I dismiss Defendants' objections (1)–(5), (7), and (8). *See* Pl.'s Reply, 3, ECF No. 149; *see also id.* at 4, n.1 (explaining the fee bases for Drs. Boespflug and Sheerin).

### B. Expert Fees

Regarding Defendants' expert witness fee objections (6), (9), and (10), 1 turn back to *Quesnoy v. Oregon*, which considered a petition seeking expert fees following a plaintiff's successful § 1983 claim. The relevant holding in *Quesnoy* reads:

> In 1991, the Supreme Court held that § 1988 does not authorize the shifting of expert witness fees to the losing party. *West Virginia Univ. Hosp., Inc. v. Casey,* 499 U.S. 83 (1991). After *Casey,* Congress amended § 1988 to allow the court, "in its discretion," to award expert witness fees "in any action or proceeding to enforce a provision of section 1981 or 1981a of this title." 42 U.S.C. § 1988(c). This amendment does not include claims brought under § 1983. *Ashker v. Sayer,* No. 05–03759 CV, 2011 WL 825713, at *4 (N.D. Cal. Mar. 7, 2011); *Ruff v. County of Kings,* 700 F. Supp. 2d 1225, 1243 (E.D. Cal. 2010); *Agster v. Maricopa County,* 486 F. Supp. 2d 1005, 1019 (D. Ariz. 2007). Thus, § 1988 does not allow an award of expert witness fees to plaintiff for prevailing . . . on her § 1983 claim.

2012 WL 1155832, at *10 (citations updated). I agree with this analysis and the findings of the various courts that have recognized the effect of *Casey* and the subsequent amendment to § 1988. I find that expert fees are not available to a prevailing plaintiff for a § 1983 claim, and I accordingly reduce Plaintiff's Bill of Costs by those amounts at issue in Defendants' objections (9) and (10), which total $4,059.97.

### C. Fee Declarant Fees

Finally, I dismiss Defendants' objection (11) to the fees sought for the assistance of Ms. Middleton and Ms. Creighton. The Ninth Circuit has held that counsel may "solicit the assistance of other lawyers in working on a case, however, and the time spent by all lawyers on a litigation can be billed so long as the hours claimed are not duplicative." *Davis v. City and Cty. of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992). Nothing in the record before me indicates that the work of Ms. Creighton or Ms. Middleton was duplicative of Plaintiff's trial counsel.

Upon careful consideration of the record, I find that Ms. Middleton and Ms. Creighton acted as fee counsel, and that "time spent by counsel in establishing the right to a fee award is compensable," and such compensability extends to situations in which a plaintiff hires "an additional lawyer to act as fee counsel." *Davis*, 976 F.2d at 1544.

### D. Conclusion

Based on the above, Plaintiff's Bill of Costs is reduced to $17,141.39.

**CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Attorney Fees, ECF No. 135, is GRANTED in the reduced amount of $318,689.48, and Plaintiff's Bill of Costs, ECF No. 135, is GRANTED in the reduced amount of $17,141.39.

IT IS SO ORDERED.

Dated this $\underline{29}$ day of March, 2016.

**Michael McShane**
**United States District Judge**
